Good morning, Your Honors. My name is Jason Baratski, and I represent a class of mobility-impaired individuals who claim to have suffered discrimination based on a lack of equal access at 23 specific Ralphs Grocery Stores. I'd like to reserve two minutes of my time for rebuttal. Whatever you've got left on the clock, when you're done, is yours. Thank you, Your Honor. There are five main reasons we take issue with the District Court's opinion. First, the District Court failed to issue a determination as to whether the ADA was or was not violated. Second, the defendant did not change his disabled patron's policy. Therefore, the litigation was not moot. Third, the District Court incorrectly applied the voluntary cessation doctrine. Fourth, the defendant did not meet his burden of proof. And fifth, the District Court abused its discretion in not issuing an injunction against the repeat offender. By way of basic background... Well, how much here is undisputed as far as you're willing to concede? Or agree? It's undisputed that there have been violations of the ADA. I believe that's correct, Your Honor. Okay. So... Yes will do fine. Yes, Your Honor. Okay. And I believe it's undisputed that they took some corrective action. Yes, Your Honor. And the... I guess this is where I'm getting stuck. And I believe the District Court believed that having corrected the violations which were pointed out, do you agree that they corrected all the violations that were pointed out? We agree that they made modifications, made over 100 modifications to these 23 stores as a result of the litigation. That's the full extent of what we agreed to at the District Court level. Our position was and is that these stores were never made fully accessible. I understand. That's a separate question. I'm really not trying to trap you with anything. I'm truly just trying to understand. Do you agree or disagree that they fixed all the things that you pointed out? If you have a dispute on that point, that's fine. Or is your position, yes, they fixed those things, but there are other things going on and just fixing specific examples isn't enough? I'm just trying to understand. Both, Your Honor. Okay. And the reason I say that is the evidence submitted to the District Court and to plaintiffs were photographs of modifications that they allegedly made and declarations from their ADA coordinator, an outside contractor, and a purported ADA expert. Other than that, there's been no additional evidence put by the two plaintiffs. So I can't affirmably tell you that, yes, these modifications were made properly, for example. And this goes into the defendant's failure to meet its burden of proof. We are also arguing that Whose burden is it? You know, you say you've made, you know, we've pointed out a bunch of access problems. And they come back and they say, well, we fixed it. In your view, they have to do more than say we fixed it? They have to provide some, what else are they supposed to do? The defendant is required because they're alleging that the claims are moot. So they bear the burden to come forth with evidence to determine that, in fact, all their stores are moot. And in this case, and specifically to answer your question, the modifications that they made were done properly. We don't believe that burden shifted to the plaintiffs because the defendants needed to come forth with evidence that their stores were fully accessible. At that point, had they submitted a declaration to the district court saying the stores are fully ADA compliant, the burden would have shifted to us. We would have been required at that point, if we wanted to dispute it, to do a Rule 34 inspection and then say, yes, we agree, or no, we don't. But what I'm saying to the Court is that the burden never shifted because they – because the defendant failed to submit they needed evidence. The – Okay. I think I understand. I don't want to take up more of your time on that one. You didn't go out and check any of – why didn't you do that? Because – And find the deficiencies. But I'm assuming that you were aware that – and you had some evidence from the other side that the work had all been completed and there were reputable contractors that did this, but you didn't send anyone out to just kind of check it and just see? We did not because it had not reached to that point yet. The defendant needed to come forth with evidence saying the store is fully ADA compliant, that all the – the stores are fully accessible. When it doesn't do that, we're waiting for that to occur to then come forth and request a Rule 34 inspection to determine whether the modifications have been corrected properly. What would occur here is – so they fix the men's restroom and that – arguably. And they don't fix any other part of the store. Am I supposed to then send an expert out for a Rule 34 inspection at that point? And then when it – when the women's restroom is not fixed, then I'm supposed to send another out a second time to determine – you know, it keeps being a step process. And my point basically is the defendant has to come forth with evidence saying that this thing is fully compliant, and then the burden would shift to me. Well, don't – in the first instance, though, you have to come out with violations, don't you? We – And you did that? Correct. And then they came back, as I understand it, with evidence that said we corrected all those violations. Correct. All right. What more are they supposed to do? They're supposed to produce evidence that the stores are fully accessible. To some degree, this dovetails into the court's prior decision in Dorn, verse 711, where the court – where this court determined that the violations are not only what the plaintiff encounters or has knowledge of prior to filing the complaint, but the plaintiff's standing is for everything within the store. So basically – basically, what needs to occur is the defendant needs to come forth and say the store is totally fixed. Until that occurs, the burden does not – the burden does not shift. Wasn't there a motion in this case trying to add allegations regarding noncompliance, and that was denied? Correct. That is correct. Subsequent to the – subsequent of the – to the summary judgment motion being granted, there were continued complaints that we received that the women's restrooms were not accessible. We sent – at that point, we sent someone out to determine whether that was true or not, and the evidence came back saying they're not compliant. That's basically my point. We have a – we have a large corporate defendant with hundreds of locations owned by a parent company, Kroger's, who has thousands of locations, and they – and they treat fixing modifications as though it's just, you know, something they do as a litigation tactic. And I'd like to reserve the remaining of my time. Okay. Thank you. Thank you. Good morning. Mike Shoney from Greenberg Torey on behalf of Rouse Apportionment Company. So I believe if we look at the issues in this case, there are two issues. Well, what do we have to show that all these stores are in compliance? Well, the – in discovery, we asked the plaintiffs to identify all the injunctive reliefs that they wanted in this litigation. In response, they submitted their investigation reports from their ADA expert, which listed by store the violations. Then Rouse went out, got his contractors, sent them out there to fix anything that needed to be fixed, and took detailed photographs showing the actual measurements. Because most of these items are – something has to be at 40 inches. So we took a photograph showing with a ruler next to it that it was at 40 inches. So we fixed everything they identified. Now, when they see the burdens on us, it's just not true. They have to identify violations. If they're saying that Rouse's parking lot is in violation… I thought their allegation was that the stores were not ADA compliant. Correct. And they gave examples of violations, but they're not required to find every single violation in the store. I mean, there may well be places in the store that they can't even – they don't even have access to. I mean, the store might be non-ADA compliant vis-a-vis employees, for example, and there may be areas in the back where, you know, they can't go without a subpoena or a court order. Are they required to find every single ADA violation? Well, for employers, they simply don't have standing. If they don't have access to a back room and they don't have standing to assert that, they'd have to be an employee of the store. I guess I – this is a class action, right? It's only customers? Correct. It's only customers, not employees? Right, it's not employees. Okay, fair enough. So in your view, they have to identify every single non-compliance in every single Rouse store? Correct. They're the plaintiff. They're alleging violations. If they allege the parking lots in violation, we don't have to, in summary of judgment, come in and show the floor department and the meat department in every square inch of the stores in compliance. They're the plaintiffs. They have to identify violations. I thought that it was your client who had the obligation to ensure compliance, store-wide compliance with the ADA as with other laws, and if they've pointed out places where there are violations, that put the burden on you to show that when everything is done, the stores are violation-free. Correct. With respect to their – did you have a certificate or proof that the stores are now violation-free? Yes, we submitted evidence that every single thing they alleged. No, that wasn't my question. There's no certificate. Was there some expert that came in and put a methadone and said, I've checked Rouse store number 57, and it is now fully compliant with the ADA? I believe the testimony was that everything identified by the plaintiffs is compliant. We didn't get a separate – Did you hear my question? Yes, we did not get an expert to go see the floor department. Okay, so if you didn't get that, why was it a problem for the district court to dismiss the case? Because the claim is not you've got specific violations. The claim, as I understand, in the complaint was you have stores that are non-ADA compliant, and here are some examples. That's not good enough. They can't say here are examples. Why not? They have to – they're the plaintiff. They have to show this is what violates the store. They can't just say, hey, we're going to allege that these eight stores – Well, they did give you a list, and it's to your client's advantage to make sure that the stores are all in compliance. Correct. And so they went. I mean, I've had cases in the past in other states where I've sat as a trial judge where the toilet seat is loose, and you have a person there who's got paralysis and it finally gets on there, and the seat is loose, he falls off and injures himself severely. How are you going to take a picture? Are you going to take a picture of a toilet? How do you know whether the seat is loose or not unless you get underneath and start taking measurements and all the rest? But it's to your client's advantage to be compliant. I agree with that. And, you know, a place can be compliant today, a bathroom, and not compliant tomorrow. That's correct. And it's your client's obligation to see that the laws are adhered to. And I agree with you, and I believe that all the stores are fully compliant. That's the point. Yeah, but you hear that all the time. You hear that all the time. The point is it's not a judgment. What? I mean, how do you know? You say that to Judge Ferguson, but what do you have to back up? You say your stores are fully compliant. Is that you, Mr. Shirlene, talking? No, that's Bart Kirkland, the ADA director. Okay. Why don't you give me a citation and a record for that? Do you have it? Is it an excerpt? It would be the declarations in support of our motion. Do you have your excerpts on record? It's not an excerpt? I don't believe it's an excerpt, no. I think the rules ask you not to put forth the briefs. I'm sorry? I thought the rules of the Ninth Circuit specified you're not supposed to, unless absolutely necessary, submit the underlying briefs. So we didn't submit the underlying briefs. Well, briefs are things written by lawyers. I thought you were citing to me an affidavit or something, a proof. You know, what lawyers say isn't evidence. You understand that difference, right? Right. So what were you quoting? A declaration from Bart Kirkland in support of our motion for submission. And who's Bart Kirkland? He's the director of retail maintenance and ADA director of the Ralph grocery store. Okay. And you don't have a copy of that with you? No, I don't. There's references to it in the statement of facts in the excerpt. But I don't believe the actual underlying motion is part of the excerpt. Uh-huh. Do you know where it is in the record? Like I said, it would be the declaration. The declaration in support of our motion for submission. I'm sorry? It would be in his declaration, Bart Kirkland's declaration. This is the kind of thing you really need to put in the excerpt of the record. But, okay. What does he say? He says that the, for example, he says the store managers do daily inspections of the store. And if anything is out of compliance, then they call him. No, but you were saying something else. You were telling Judge Preggerson that you had proof. You said our stores are ADA compliant. And I was wondering where you got that. Was that just you talking or do you have proof? And you then said there was this affidavit or declaration by this guy. And now you tell me he doesn't say that. What I'm trying to say is I believe in declaration he states that the stores are compliant. What I want to mislead you, what I'm saying is there is no, we did not take photographs of every square inch of the floor department, of the meat department, that they did not allege were in violation. We did not do that. And so although he says that the stores are compliant, and then we submit evidence that's a particular violation of the letter. Well, let me ask you, does he say the stores are ADA compliant or not? I believe so. But I'm saying it would be a general statement. It wouldn't be I went to the floor department and I measured the floor department. I'm not sure what you're saying. Does he say the stores are ADA compliant? I believe he does. But all I'm saying is you won't have, it would be that the stores are compliant. Are you hearing my question? I believe he does. Are you hearing what I'm asking you? Yes. Does he say the stores are ADA compliant? Period. I don't hear anything else. There's a yes, there's a no, and there's I don't know. Okay. I'm not sure then. Okay. So when you told Judge Preggers the stores are ADA compliant, you were making it up? No. I was saying if the contractors went to the stores and said Rouse has policies in place to make sure they're compliant. The what? They have policies in place to make sure they're compliant. The what? Policies. Yeah, but who's going to follow up on those and see that it's done? You know, it's to your company's advantage to comply. And to have a system in place so that they can readily prove that there's compliance. You know, these folks are serving, I think, a useful purpose. They're going around and certainly making money doing that. And it's costing you money too. But you need to have a system where you can readily show that your stores are in compliance. Right. You get a lot of lawsuits. And so I don't know why we have all this rigmarole here. You've got somebody in your stores that goes around once every, say, week or two weeks to these stores and checks to see that, you know, the major things are in compliance at least. That the toilet seats aren't loose. That there's handlebars there. That people in wheelchairs that want to wash their hands are readily accessible. It's easy for them to get in and out of the doors. That there's handicap parking. You've got ramps out there so people can, you know, get in the store. Right. And the managers perform daily inspections. There's a lot of things. What? The managers perform daily inspections of the stores. And that's an affidavit too? And do they file a report every day? We've checked these stores? No, they don't. Huh? So how do you know they do it? Because that's the policy of the store. Well, that doesn't mean they're going to do it. They wash the store daily. You know, the policy we have here is you've got to put certain things in the excerpts of record. You haven't done that. So how can you rely on some manager someplace unless you've got mechanisms in place to make sure they're doing their job? I'm also relying on the evidence we submitted that everything is in compliance. We documented it. Yeah, but they just went around there to pick up things. They sent their expert to survey the store, the whole store. What else did they want? Did the expert look at the women's bathrooms? Their expert? I don't believe he did. Their expert. No, your expert. Our expert did, yes. I thought they didn't look at the women's bathrooms. No, that's their expert. But yours did. Correct. And you have an affidavit or declaration from your expert. Not in the... In the record. Not from our... I'm sorry, not our expert. Well, the contractor looked at it. The one who did all the changes. Yeah, but, you know, are you going to rely on contractors now? I'm sorry, and the contractor looked at the contract as an expert in ADA and he certifies that the store is ADA compliant? He's licensed in Title 24 and the ADA. And he expressed an expert opinion that the stores are ADA compliant? We had an expert for that, too, but the person who performed the modifications... I understand, but we're talking about the contractor now, which is what you were talking about. Did the contractor say the stores are ADA compliant? You're nodding. You can't pick it up in the record, you know, when you nod. Like I said, these... Did you hear my question? Does your contractor say in his sworn declaration or affidavit that the stores are ADA compliant? Yes, no, I don't know. He says... Why don't we start with one of those three answers? Yes, no, I don't know. Any of the three is acceptable. You can then explain if you want. But why don't you start with one of those three? Yes to qualification. That wasn't choice. Yes, he says they're compliant. He says they're ADA compliant. He says the following are the conditions of the store, and he goes through all of them. He goes through store by store. And he says the stores are ADA compliant. He lists... Does he say he went to the floor department? No. He lists every thing. He says here are the following conditions. I don't understand. Is English a second language for you? Do you understand what I'm saying? Does he say, I've checked the stores and they're ADA compliant? Do you understand what that means? Yes, he does. Okay, he says that. Okay, you will provide us that affidavit where he says that. You've got 48 hours to provide us, your contractor's affidavit, a copy of it from the record, assuming it's in the record, and also the affidavit of your expert that you refer to. Okay? Okay. Just go ahead and file them the next 48 hours. All right. Okay? Unless there be any other questions, we'll have you sit down. Thank you. You have about a minute and a half left for rebuttal. Mr. Borodsky, let me, before you start, ask you a question. You want an injunction. The only thing in the record that I see that's referred to, and Judge Pergerson alluded to it, is the fact that someone could pull down a bar, someone could move a toilet seat so that it becomes loose or it could become loose after a while, and you want an injunction to address those kinds of things that might happen in the future. What possible kind of injunction would address that? In other words, the thing in the record is, the woman says, sure, someone might pull out a grab bar. Someone might destroy a toilet seat. We don't know why they do that, so we might be out of compliance. That's the only thing in the record that I saw that they might be out of compliance. That's the things that she referred to in her testimony had nothing, nothing to do with Ralph. It had to do with Ralph's customers. That's like saying, I'm entering an injunction that this store should never be robbed. Would you respond to that? I would. And the perfect example that I could give, Your Honor, is the door pressures on the restroom doors. The door pressures, ADAG requires five pounds of pressure. That is going to change as a result of customer use. That is in the record. That was a part of the record when I deposed their ADA coordinator. That is going to change. Therefore, when you have a serial violator like Ralph's, 60 prior federal lawsuits, not counting the state lawsuits, three current lawsuits, this Court has already found that they fail to maintain accessible areas of their stores. Other district courts have done the same. When you have a defendant like this, and we know that maintenance is required so the doors stay accessible, without an injunction requiring it, it's not going to happen. But the injunction would just affect these 23 stores, as I understand. That's correct. We are also representing a class for the remaining portion of the chain for all of their stores because we have found the same violations in these 23 that were found in the rest of the chain. So the other violations that were not analyzed by the district court, for example, were pallets of merchandise put right in front of the restrooms. Wheelchairs can't get by. These are not isolated incidents of the threat. This is a consistent pattern that takes place, and it's because the disabled patron's policy does not call for any inspection whatsoever of the restrooms and parking areas. If they would just routinely inspect it, they could find these maintenance problems before they take away accessibility for people in wheelchairs. So our point is there's a policy, a written policy here, that is discriminatory because it does not address restrooms and parking lots. And on top of it, they don't enforce the policy when it comes to putting pallets of merchandise in front of the restrooms. And the evidence of record, I disagree with counsel. The evidence of record was solely that in response to receiving our investigation reports that counsel made a punch list of items on those reports, supplied that evidence to their ADA coordinator, who hired a contractor to go out and just address the specific things that were on the punch list that he put together. There is no evidence of record in this case that they ever inspected any other portion of their stores. If they had, they would have learned that the women's restroom that was literally two feet away was not accessible because they don't check. They don't find these things. And I submit to the court that the reason they don't check, and it was pretty clear, I believe, in Mr. Kirkland's deposition, was because they wait until they do large-scale remodels and they don't want to do the maintenance to keep it going. I asked him, can't you go out and just inspect the stores? We don't do that. Why? That was the question that was asked. He said, we don't do that. Later on, they then came forward with some evidence that store managers have the ability to check it. That's not the same thing as having their written policy, specifically not having restrooms and not having parking lots listed. There were overall, it's undisputed. What was the problem with the parking lots? No man-accessible parking. No signs. Aisles were not large enough. They did not have it. Or in some cases, they didn't have enough accessibility. I've never seen a house parking lot that didn't have handicap parking. Not in 20 years. I mean, I haven't done a survey, but I... The photographs, the evidence submitted is part of the record. The investigation reports. I mean, isn't it state law, aside from anything else, that if you have a public parking lot, you've got to have so many spaces for a handicap accessible? State law, federal law being violated. What's going on in your state case right now? It's... Waiting for this decision? Because he, as I understand it, remanded, or not remanded, but dismissed it with leave to file in the state. That's correct. Now, the motion to supplement the record that you wanted, did that contain new allegations as to some of these things you're talking about now, violations? Yes. That motion was denied. By whom was it denied? District Court. No, I believe it was denied by this Court. I apologize. Yes. So is it something that we can consider here? The evidence of record that this Court can consider is that the defendant did not supply any evidence to the District Court that these stores are compliant. We contend that the reason they didn't was because they're not. So that is the issue. If they're going to meet their heavy burden of showing that this litigation is moot, they have to come forward with evidence saying that these stores are compliant. Otherwise, it takes another lawsuit with regards to the women's restroom to try to gain accessibility for that portion of the stores. I've made you take too much time. I'm sorry about that. No, it's an important subject. You know, I must tell you these pictures are less than illuminating. You know, we have to color print this nowadays. Yes, Your Honor. Okay. Thank you. Cases, I argue, will be submitted. We'll expect and, of course, you will send copies of what you send to the Court to opposing counsel. I don't want anything that's not in the record. These are all things that are in the record but didn't make it in the excerpts, the two affidavits that counsel for our office, Mr. Chalin, referred to. Okay. Thank you. We'll next hear argument in.
judges: Kozinski, Pregerson, Quist